ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
FRANKLIN A. TAVERAS,

            Plaintiff,

    -against-

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-977 (FB)

*Appearances:*
*For the Plaintiff:*
BARRY SIMON, ESQ.
Simon & Gilman, LLP
97-45 Queens Blvd., 10th Floor
Forest Hills, NY 11374

*For the Defendant:*
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: MARGOT P. SCHOENBORN, ESQ.
Assistant United States Attorney
147 Pierrepont Plaza
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

    Plaintiff Franklin A. Taveras ("Taveras") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security income ("SSI") and disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner's decision is reversed and the case is remanded for further development of the record.

## I.

For approximately 17 years, Taveras worked as a machine presser, ironing mink and other furs. He stopped working in December 2001, allegedly due to difficulty sleeping and a mental disorder that arose after the death of his wife in 1999. He applied for SSI and DIB on March 13, 2003, claiming disability since December 29, 2001. After those applications were denied, Taveras requested a review hearing before an Administrative Law Judge ("ALJ"), which was held on June 13, 2005. In a decision dated July 29, 2005, the ALJ applied the familiar five-step process and found, at step four, that Taveras was not disabled because his residual functional capacity ("RFC") permitted him to return to his past work. The ALJ's decision became the final decision of the Commissioner on January 16, 2006, when the Appeals Council denied Taveras's request for review. This action followed.

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ's findings at steps one and two – that Taveras has not engaged in substantial gainful activity since December 29, 2001, and that he suffers from severe psychiatric impairments – are undisputed. With respect to step three, Taveras argues that

2

the ALJ should have found that his impairments satisfied the criteria for Listing 12.04 (Depressive Syndrome) of the Commissioner's list of impairments considered *per se* disabling.

In the alternative, Taveras challenges the ALJ's step-four finding. In that regard, he argues that in determining his RFC, the ALJ (1) improperly applied the treating physician rule, (2) improperly disregarded Taveras's subjective complaints of severe pain and limitations, and (3) improperly evaluated the work-related side effects of Taveras's medications. He further argues that the ALJ's characterization of Taveras's prior work as "simple, unskilled [and] low stress," A.R. at 26,[1] was not based on substantial evidence. The Court addresses each argument in turn.

## A. Step Three

To meet or medically equal a listed impairment, the claimant "must meet all of the specified medical criteria" or "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (emphasis in original). Although Taveras testified that he suffered from some of the symptoms required under Listing 12.04, *see, e.g.*, A.R. at 223-24 (hallucinations), 225 (difficulty concentrating), 226 (sleep disturbance), he failed to establish, as he was also required to do, that those symptoms resulted in a marked limitation in at least two areas of functioning. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B) (defining areas of functioning as (1) activities of daily living; (2) maintaining social functioning; (3)

---

[1] "A.R." refers to the administrative record.

maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration). The ALJ's conclusion that Taveras's functioning was not markedly limited is supported by substantial evidence, including: (1) records from an initial interview at Rockaway Mental Health Services ("Rockaway") on July 8, 2002, stating that his activities of daily living appeared intact, *see* A.R. at 172; (2) a re-evaluation report dated July 14, 2003, noting that Taveras continued to preach door-to-door with other church members on a daily basis, *see* A.R. at 166; and (3) treating physician Dr. Vernikov's August 14, 2003 statement that Taveras "report[ed] to be able to take care of himself (clean the apartment, shopping, cooking)," *id.* at 139.

## B. Step Four

### 1. *Residual Functional Capacity*

The ALJ found that Taveras's RFC permitted him to perform "simple, unskilled low stress work." *Id.* at 26. Specifically, he found that Taveras "suffered from depression and psychosis which limit[ed] his ability to perform complex tasks," but "retain[ed] the ability to understand, carry out, and remember simple instructions associated with unskilled work, as well as the ability to respond appropriately to supervisors, co-workers, and work stresses in a low stress work setting." *Id.* at 25. These findings are supported by substantial evidence, including: (1) the August 26, 2003 consultative psychiatric examination of Dr. Algaze, who concluded that Taveras "exhibited a fair ability to concentrate and recall," and that his "[p]ersistency, comprehension, and pace" and "adaptability to the work environment appear[ed] to be mildly impaired," *id.* at 145; and (2) the October 20, 2004 mental status examination from

4

Rockaway revealing, as the ALJ correctly summarized, that Taveras was "oriented, coherent, had normal psychomotor activity, logical thought process, fair concentration, unimpaired memory, fair insight and unimpaired judgment," *id.* at 24 (citing Exhibit 9F (A.R. at 183-85)).

Contrary to Taveras' contention, the ALJ's RFC determination did not violate the "treating-physician rule," under which "'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)). According to the Commissioner's regulations, a treating source's opinion regarding a claimant's RFC – as opposed to the nature and severity of the claimants' impairments – is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) ("[T]he final responsibility for deciding . . . issues [such as RFC] is reserved to the Commissioner. We will not give any special significance to the source of an opinion on [such] issues . . . ."). Even if it were, no treating source expressed an opinion regarding Taveras's RFC; indeed, as the ALJ noted, *see* A.R. at 23, treating physician Dr. Vernikov explicitly stated that she was unable to comment on Taveras's ability to perform work-related activity. *See id.* at 139. While the ALJ acknowledged that Dr. Robotti's opinion of Taveras's limitations contradicted his RFC finding, *see id.* at 24, that opinion was not entitled to controlling weight since Dr. Robotti was not a treating source; rather, he was a

5

consultative psychiatrist who examined Taveras on only one occasion. *See id.* at 190-91.

Nor did the ALJ fail to take into account Taveras's subjective complaints: The ALJ noted that Taveras complained of "an inability to sleep, some poor concentration due to this, and some vague hallucination regarding his wife," *see* A.R. at 24, but concluded that these complaints were contradicted by Taveras's admissions that Ambien helped him sleep, and that other medications helped control his hallucinations, *see id.* The ALJ further noted Taveras's claim that his symptoms had worsened despite treatment, *see id.*, but rejected it as inconsistent with other evidence, including the October 20, 2004 mental status exam discussed above and Taveras's reports to medical sources that he continued to engage in such activities as preaching door-to-door, shopping, cooking and cleaning his apartment, *see id.* Since the ALJ provided ample reasons, supported by the record, for his conclusion that Taveras's subjective complaints were not credible, the Court cannot hold otherwise. *See Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) ("If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." (citations omitted)).

Finally, the ALJ did not, as Taveras contends, fail to take his medications into account in determining his RFC. As noted in the preceding paragraph, the ALJ specifically addressed Taveras's medications and their effectiveness in treating his insomnia and hallucinations. *See* A.R. at 24. Since the record does not contain any evidence that Taveras suffered adverse side effects from those medications, there was no reason for the ALJ to address side effects in his RFC determination.

## B. Characterization of Past Relevant Work

Although the ALJ's RFC determination was based on the correct legal standards and supported by substantial evidence, his finding the Tavera's past relevant work was within that RFC was not. In support of his finding that machine pressing is "simple, unskilled low stress work," A.R. at 26, the ALJ relied entirely on the definition of "machine pressing" set forth in section 363.682-18 of the Department of Labor's Dictionary of Occupational Titles ("DOT"). *Id.* at 25.[2]

The DOT "describes jobs as they are generally performed," *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003), and is entitled to some weight on that issue, *see Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (reversing decision that deviated from the DOT without adequate evidentiary support). Although the definition set forth in section 363.682-18 supports the ALJ's conclusion that Taveras's prior work was "simple" and "unskilled," it does not address the level of stress associated with Taveras's particular job.

Thus, the ALJ's conclusion that Taveras's past work was "low stress," and therefore within his RFC, was not supported by substantial evidence. As a result, the case

---

[2]The ALJ actually cited section 363.682-016, which does not exist. Since the definition of "machine presser" found in section 363.682-018 is consistent with the description of Taveras's past work, the Court assumes that the ALJ's citation was merely a typographical error.

The ALJ also mistakenly identified the work as requiring "light" exertion; section 363.682-018 plainly describes the work as "medium." Since it is undisputed that Taveras had no exertional limitations, the ALJ's error was harmless.

7

must be remanded for development of the record on this issue; specifically, the ALJ must elicit evidence (for example, through the testimony of a vocational expert) as to the stress level of Taveras's past work and whether that level exceeds his RFC. *See Henrie v. Department of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (remanding because "several explicit references in the record to claimant's inability to handle stress . . . suggested a need to probe the stress level of any prior job that the ALJ might find the claimant capable of performing under step four.").

## CONCLUSION

For the foregoing reasons, the case is remanded for further proceedings in accordance with this Memorandum and Order.

**SO ORDERED.**

/SIGNED/

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 25, 2007